# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned On Briefs July 9, 2013

## STATE OF TENNESSEE v. MARCO BLANCH

**Appeal from the Criminal Court for Shelby County**
**No. 11-03851     J. Robert Carter, Judge**

---

**No. W2012-01027-CCA-R3-CD  - Filed October 4, 2013**

---

In 2011, the Shelby County Grand Jury indicted Appellant, Marco Blanch, for aggravated rape based upon bodily injury sustained by the victim.  A jury convicted Appellant of the lesser included offense of rape. Appellant was sentenced as a Range I, violent offender to an eleven-year sentence at 100 percent.  On appeal, Appellant argues that the evidence presented by the State at trial was insufficient to support his conviction because the victim consented to sexual activity.  After a thorough review of the record, we affirm the judgment of the trial court and conclude that the evidence was sufficient to support Appellant's conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and ALAN E. GLENN, J., joined.

Stephen Bush, Chief Public Defender and Harry E. Sayle, III, Assistant Public Defender, Memphis, Tennessee, for the appellant, Marco Blanch.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Amy P. Weirich, District Attorney General, and Terre Fratesi, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

*Factual Background*

On February 3, 2011, C.J.[1], the victim, was seventy-nine years old and was living in a duplex in Memphis.  After her husband's death in 1996, the victim had lived on

---

[1] It is the policy of this Court to refer to the victims of sexual crimes by their initials.

her own at the duplex. Her son, Sam Jones, eventually moved in with the victim because the family noticed she had become forgetful and often wandered down the street or around the block. Mr. Jones helped with the cooking and cleaning. The victim's primary care doctor since 2005, Dr. Ahsan Kathawala, testified that he first noticed a decline in the victim's cognitive abilities in 2006 and informed the family she was in the early stages of dementia or Alzheimer's, which he classified as mild. At this point in time, the victim had a score of nineteen out of thirty on the mental state examination. He further testified that in March 2011, the victim's cognitive abilities had significantly deteriorated, impairing her ability to properly reason and recall information, classifying her stage of dementia or Alzheimer's as moderately severe. Her mental state had declined to eleven or twelve out of thirty. Dr. Kathawala opined that the victim was not capable of giving consent to sexual activity because she could no longer understand the consequences of her conduct. He also stated that the victim suffered from rheumatoid arthritis, osteoporosis, and hypertension. She used a crutch because these ailments hindered her ability to walk. Although the victim had not been declared incompetent, her family would not allow her to drive.

Vernecia Askew, the victim's daughter, provided the victim with transportation, did the victim's laundry, and made sure the victim's bills were paid. The victim's grandson, Kenneth Nash, lived on the other side of the duplex for the twenty-one years preceding the incident and helped the victim with her medicine and cooking. Mr. Nash had, at some point, installed a surveillance camera because things had gone missing from the victim's side of the duplex. The surveillance camera presented a view of the victim's front room and front porch but not her bedroom.

On February 3, 2011, Appellant came to the duplex shared by the victim and Mr. Jones to watch a basketball game and drink beer. Mr. Jones testified that Appellant had been to the residence on two or three occasions before the day in question to watch sports. Mr. Jones had not invited Appellant to his residence to watch sports on the day of the incident. Upon arriving at the residence of Mr. Jones and the victim, the victim told Appellant that Mr. Jones was not home, but Appellant could wait for Mr. Jones inside if he would give her some of his beer. The victim retrieved a glass, and Appellant then poured her a glass of beer. The two talked before the victim went into her bedroom. Appellant claims that the victim initiated the incident at issue. He stated that the victim said she liked younger men and invited him to her bedroom where she initiated sexual intercourse by rubbing his privates and kissing him.

Sergeant David Sloan of the Memphis Police Department reviewed the surveillance tape and opined that there was no visual or audio evidence of the victim initiating the incident with Appellant. Sergeant Sloan testified that the basketball game on the television can be seen and heard on the surveillance tape. He also stated that the victim's physical

disabilities that hindered her ability to walk are evident on the surveillance tape. He further stated that the video shows the victim exiting her bedroom briefly, returning, and Appellant entering shortly after. Sergeant Sloan also noted from his viewing of the surveillance video that after Appellant entered the victim's bedroom a distinct yell, like a person in pain, can be heard coming from the victim's bedroom.

Mr. Nash heard the knock at the victim's door. He went over after he heard more talking. Mr. Nash entered and proceeded to open the victim's bedroom door and saw Appellant engaged in sexual intercourse with the victim. Appellant, while putting his pants on, explained that the victim had wanted him to do it. The victim began yelling at Mr. Nash that she could see whomever she desired. At some point during her yelling, the victim referred to Appellant as Curtis, her deceased husband.

Ms. Askew also testified that the victim was yelling when she arrived. Mr. Nash prevented Appellant from leaving while Mr. Jones, Ms. Askew, the police, and others arrived. Sergeant Sloan responded to the call and conducted interviews. Sergeant Sloan declined to take a formal statement from the victim because, as he testified, it was apparent she was suffering from a mental deficiency due to her nonsensical answers to his questions. Sergeant Sloan also noted that the victim inquired about relatives who were deceased and was expecting her deceased husband to arrive at the duplex. Officer Brandon Hudson was also at the scene and testified as to the victim's mental incapacities. Officer Hudson explained that the victim had difficulty concentrating and answering his questions, stating that she could not stay focused on the task at hand or the questions he was asking. He further stated that the victim would "jump in and out," referring back to childhood, working in the field, or driving and working on tractors.

Early in the morning of February 4, 2011, the victim was taken to the rape crisis center by Ms. Askew and examined by Sally Discenza, a forensic nurse examiner. Upon an examination, Nurse Discenza observed an acute or recent injury on the victim's labia and posterior fourchette, the area just outside the vagina. She explained that both areas were bleeding, reflecting a recent occurrence or injury. According to Nurse Discenza, the victim's injuries were consistent with sexual penetration. She further testified that the victim was unable to spread her legs to the point where Nurse Discenza could safely insert the speculum for examination. Nurse Discenza noted that she was fearful of hurting the victim because her legs were so stiff and immobile from extreme contractures. Nurse Discenza opined that the victim's injury was consistent with a forced penetration. The victim's answers to Nurse Discenza's questions and some of her statements were nonsensical. The victim even told her that no one but her husband, Curtis, enters her bedroom. Ms. Askew confirmed the victim's statements to Nurse Discenza regarding her late husband.

On June 9, 2011, an indictment was returned charging Appellant with aggravated rape in violation of Tennessee Code Annotated section 39-13-502 for the incident occurring on February 3, 2011. On February 9, 2012, the jury returned a verdict finding Appellant guilty of the lesser included offense of rape pursuant to Tennessee Code Annotated section 39-13-503. The judge sentenced Appellant as a Range I, violent offender to eleven years at 100 percent. Appellant's motion for new trial was denied. He filed a timely notice of appeal.

## ANALYSIS

Appellant challenges the sufficiency of the evidence supporting his rape conviction. Appellant argues that the victim consented to sexual intercourse and, in fact, initiated the proceedings. The State contends that the evidence was sufficient to convict Appellant of rape and that this Court should affirm the judgment of the trial court.

When a defendant challenges the sufficiency of evidence, the relevant question is whether any trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). In making this decision this Court is to afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate interests that may be drawn therefrom." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). A guilty verdict that has been rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflict in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). The guilt of a defendant may be predicated upon direct evidence, circumstantial evidence, or a combination of the previous two. *See State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). Although the accused is originally cloaked by a presumption of innocence, a guilty jury verdict removes this presumption and replaces it with a presumption of guilt, thus, placing the burden of proof with the defendant to show insufficiency of the evidence on appeal. *Tuggle*, 639 S.W.2d at 914. As such, questions concerning the weight and value to be given to evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact; this Court is precluded from re-weighing the evidence when evaluating the convicting proof, nor may we substitute our own inferences for those formed by the trier of fact from circumstantial evidence. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990); *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

"The standard of review is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). Here, Appellant was convicted of rape,

as a lesser included offense of aggravated rape. When a defendant is convicted of a lesser included offense, the defendant may challenge the sufficiency of the evidence even if the proof is not sufficient to support the primary offense. *State v. Parker*, 350 S.W.3d 883, 909 (Tenn. 2001). When convicted of the lesser included offense, the proof must be sufficient to support each and every element of the conviction offense to sustain a conviction. *Id.* "If every element is not supported by sufficient proof, the defendant is entitled to a reversal of the conviction." *Id.*

Relevant to this appeal, rape is defined as the following:

[U]nlawful penetration of a victim by the defendant or of the defendant by a victim accompanied by any of the following circumstances:

(1) force or coercion is used to accomplish the act;

(2) The sexual penetration is accomplished without consent of the victim and the defendant knows or has reason to know at the time of the penetration that the victim did not consent;

(3) The defendant knows or has reason to know that the victim is mentally defective, mentally incapacitated or physically helpless; or
(4) The penetration is accomplished by fraud.

T.C.A. § 39-13-503(a).

Appellant contends that the victim consented to sexual intercourse and, in fact, initiated the sexual activity through her actions and statements. Appellant argues that the testimonies of Mr. Nash and Ms. Askew, as well as the surveillance video support the conclusion that the victim was aware of her actions. Appellant contends that the video showing the victim inviting him inside, asking for and receiving some of his beer demonstrates her ability to consent. Further, Appellant argues that the victim's yelling at Mr. Nash and Ms. Askew about their interruption of the incident demonstrates that she had both consented to and sought sexual activity.

In viewing the evidence most favorably for the State, it is reasonable that a jury could conclude that Appellant had reason to know the victim was suffering from a state of dementia or mental defectiveness that rendered her incapable of giving consent. The victim's stage of dementia or Alzheimer's was so severe that others noticed she was mentally

defective. Despite the victim's statements to Mr. Nash and Ms. Askew and the surveillance video, Appellant's allegation that the victim consented is negated by the State's proof. Dr. Kathawala testified as to the declining mental capacities of the victim. He stated that she no longer had the ability to properly reason or to recall information. Most importantly, Dr. Kathawala testified that the victim was no longer able to give consent. Additionally, Sergeant Sloan, Officer Hudson, and Nurse DiScenza immediately noticed the victim's defective mental state and inability to properly reason or give consent during their interactions with the victim. Given the obvious nature of the victim's deteriorated mental capacity, it is reasonable for a jury to conclude that Appellant had reason to know that she was unable to give consent. The task of weighing the evidence at trial belongs to the jury. In this case, the jury chose to accredit the State's witnesses. There was ample evidence for a rational jury to conclude beyond a reasonable doubt that Appellant sexually penetrated the victim when he knew or had reason to know that she suffered from a mental defect rendering her unable to consent. Appellant is not entitled to relief.

## CONCLUSION

Based on the foregoing reasons and authority, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE